UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| ALBERTA LEE GERK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 15-1145 |
| ) | |
| CL MEDICAL SARL; CL MEDICAL, INC.) | |
| AND UROPLASTY, INC. ) | |
| ) | |
| Defendants. ) | |

## ORDER AND OPINION

This matter is now before the Court on Defendant CL Medical SARL's Motion [43] to Dismiss for Lack of Jurisdiction. For the reasons set forth below, Defendant SARL's Motion is Denied.

### 1. BACKGROUND

The following facts are taken from Plaintiff's First Amended Complaint and the affidavit of Rachel Abrams. Alberta Lee Gerk, an Illinois resident, initiated this products liability action after suffering injuries stemming from a May 22, 2012, surgical implantation of an I-STOP transvaginal mesh sling used to treat stress urinary incontinence. Defendant CL Medical SARL ("SARL") is a French corporation with its principal place of business in Sainte Foy Les Lyon, France. SARL manufacturers the I-STOP devices in France and ships them to CL Medical, Inc. ("CL Medical"), a separate corporate entity organized under the laws of Delaware with its principal place of business in Laguna Beach, California. CL Medical sells and distributes the I-STOP devices to a handful of states in the United States. SARL and CL Medical are both owned by the same French holding company, CLJ Financial Group. Vincent and Caroline Goria own

1

CLJ Financial Group, they own a majority interest in CL Medical, and Mr. Goria is the founder and president of SARL.

SARL operates a website at www.clmedical.com, but makes no distinction between CL Medical SARL and CL Medical, Inc. Plaintiff's exhibits include web pages downloaded from the site where SARL makes representations such as "CL Medical employs twenty-one members of staff, with six in the United States" and that it is "also set up in the United States but does all its manufacturing in France." SARL's website indicates that it may be contacted through "CL Medical Inc.," and lists a United States address and phone number. The "events" section of SARL's website indicates that "CL Medical" would be hosting events in Paris, Chicago, San Diego, and Hawaii in 2013. The Abrams Affidavit contains an exhibit showing that "CL Medical" was an exhibitor at the 2012 American Urogynecologic Society's Annual Scientific Conference in Chicago, Illinois, and links to SARL's website.

The Abrams Affidavit states that SARL advertised "Reference Centers" in Illinois and throughout the United States in April, 2010. Plaintiff's implanting physician, Dr. West of Galesburg Cottage Hospital, was listed as one of the Reference Centers. SARL also hosted product training courses for doctors in Illinois and elsewhere. CL Medical, through its agent in Chicago, sold multiple I-STOP devices to the Galesburg, Illinois hospital where Plaintiff was implanted with the device. Approximately 900 I-STOP devices have been sold in the United States. The Abrams Affidavit also alleges, though equivocally, that Mr. Goria traveled to Illinois on behalf of SARL to market the device to Illinois hospitals.

The Complaint alleges that SARL and CL Medical are alter-ego companies, and "there is a unity of ownership and interest between [the] two defendants." It claims that Mr. Goria controls the day-to-day operations of SARL and CL Medical from CL Medical's offices in

California, and that SARL "purposefully directed its business toward Illinois by furnishing medical devices for use in multiple patients in Illinois." The Complaint further alleges that because CL Medical was the exclusive distributor of the I-STOP device, SARL "had knowledge that the I-STOP was being sold in Illinois."

Specially Appearing Defendant SARL filed a Motion to dismiss Plaintiff's original Complaint on July 27, 2015, arguing that this Court lacked personal jurisdiction over the foreign manufacturer. Plaintiff filed a Motion for leave to propound limited jurisdictional discovery on October 29, 2015. On December 2, 2015, this Court entered an Order and Opinion granting SARL's Motion and dismissing Plaintiff's Complaint without prejudice, reasoning:

> Here, no facts are presented that identify I-STOP sales directed to, or made in Illinois. No facts are presented that indicate the I-STOP device implanted in Plaintiff was sold in Illinois to a physician or hospital. No facts are presented that show which states the device is marketed and sold in. Nor does Plaintiff provide evidence or specific facts about the alleged exclusive distribution agreement between SARL and CL Medical, aside from claiming she is unaware of other companies that distribute products through CL Medical. Plaintiff has neither alleged specific facts, nor presented any evidence indicating that SARL intentionally availed itself of the privilege of conducting business in Illinois, or that it was reasonably foreseeable that its products would end up in Illinois. See *Arnoult* at \*10. As such, Plaintiff has not shown that SARL had minimum contacts with Illinois sufficient to subject it to personal jurisdiction here. Thus, the personal jurisdiction analysis ends. *Pension Fund*, 23 F.3d at 944.

E.C. F. Doc. 32, at 6.

Plaintiff subsequently filed an amended Complaint, and SARL again moved to dismiss for lack of personal jurisdiction. This Order follows.

## 2. STANDARD OF REVIEW

*A) Pleading Requirements*

Courts have traditionally held that a complaint should not be dismissed unless it appears from the pleadings that the plaintiff could prove no set of facts in support of her claim which

3

would entitle her to relief. See *Conley v. Gibson*, 355 U.S. 41 (1957); *Gould v. Artisoft, Inc.*, 1 F.3d 544, 548 (7th Cir. 1993). Rather, a complaint should be construed broadly and liberally in conformity with the mandate in the Federal Rules of Civil Procedure 8(e). More recently, the Supreme Court has phrased this standard as requiring a showing sufficient "to raise a right to relief beyond a speculative level." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007). The claim for relief must be "plausible on its face." *Id.*; *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1953 (2009). For purposes of a motion to dismiss, the complaint is construed in the light most favorable to the plaintiff; its well-pleaded factual allegations are taken as true. See *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Hishon v. King & Spalding*, 467 U.S. 69 (1984); *Lanigan v. Village of East Hazel Crest*, 110 F.3d 467 (7th Cir. 1997); *M.C.M. Partners, Inc. v. Andrews-Bartlett & Assoc., Inc.*, 62 F.3d 967, 969 (7th Cir. 1995); *Early v. Bankers Life & Cas. Co.*, 959 F.2d 75 (7th Cir. 1992).

*B) Specific Jurisdiction*

In addition to the pleading requirements, the defendant must be subject to the Court's jurisdiction. The Due Process Clause requires that individuals have "fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign," *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens, J., concurring), thus providing "a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); see also *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). As such, the "plaintiff bears the burden of demonstrating personal jurisdiction." *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 942-45 (7th Cir. 2000) [hereinafter *Pension Fund*]. A defendant must have

purposefully established minimum contacts for personal jurisdiction to be proper. *Burger King Corp. v. Rudzewicz*, 471 U.S. at 474-76.

Where a "State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum, the State is exercising 'specific jurisdiction' over the defendant." In contrast, "[w]hen a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum," the State is exercising 'general jurisdiction' over the defendant. See *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8, 9 (1984). And a federal district court exercising diversity jurisdiction has personal jurisdiction only to the extent that the court of the state in which it sits would have personal jurisdiction. See *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997). Because the Illinois long-arm statute "permits the exercise of jurisdiction to the full extent permitted by the Fourteenth Amendment's Due Process Clause . . . the state statutory and federal constitutional inquiries merge." *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). The Seventh Circuit uses a three-part test to determine whether specific personal jurisdiction is proper:

> (1) identify the contacts the defendant has with the forum; (2) analyze whether these contacts meet constitutional minimums and whether exercising jurisdiction on the basis of these minimum contacts sufficiently comports with fairness and justice; (3) determine whether the sufficient minimum contacts, if any, arise out of or are related to the causes of action involved in the suit. If the court determines at the second step that a defendant does not have sufficient minimum contacts with the forum, then its personal jurisdiction analysis ends without examining the plaintiff's causes of action.

*Pension Fund*, 230 F.3d at 944.

Although the plaintiff bears the burden of establishing personal jurisdiction, "[w]hen challenged at the motion to dismiss stage, the plaintiff need only make a prima facie showing of facts establishing personal jurisdiction." *United States ex rel Conyers v. Kellogg, Brown & Root,*

5

*Inc.*, 2015 WL 1510544 (C.D. Ill. Mar. 30, 2015) (citing *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012)). Thus, the Court takes as true all well-pleaded facts alleged in the complaint and resolves any factual disputes in favor of the plaintiff. *Tamburo*, 601 F.3d at 700.

### 3. ANALYSIS

In its prior Order and Opinion dismissing Plaintiff's original Complaint under Federal Rule of Civil Procedure 12(b)(2), this Court stated that the facts in Plaintiff's Complaint "place this case very close to—if not within—the narrow category of cases governed by the plurality opinion in *J. McIntyre Machinery, Ltd. v. Nicastro*, where a single, isolated sale was not sufficient to confer personal jurisdiction, even if it was anticipated." See E.C.F. Doc. 32, at 5 (quoting *Arnoult v. CL Medical SARL*, 2015 WL 554301 at *10 (S.D. Miss. Sept. 21, 2015)). Because the outcome of SARL's Motion to Dismiss depends on whether Plaintiff's amended Complaint sufficiently alleges facts showing that SARL purposefully availed itself of the privilege of conducting activities within Illinois, a review of the Supreme Court's opinion in *J. McIntyre* is appropriate.

*J. McIntyre* involved a products liability action filed in New Jersey state court. *J. McIntyre Machinery, Ltd.*, 131 S.Ct. at 2786. Plaintiff Nicastro injured his hand while using a metal shearing machine manufactured in England by J. McIntyre Machinery, Ltd. ("J. McIntyre"). J. McIntyre did not sell its machines to buyers in the United States directly; rather, it sold the machines to an independent distributor outside of J. McIntyre's control. *Id.* (however, the distributor "structured its advertising and sales efforts in accordance with J. McIntyre's direction and guidance whenever possible"). The manufacturer sent officials to attend annual conventions to advertise J. McIntyre machines alongside the company's distributor, but none of the conventions took place in New Jersey. *Id.* Some of the machines were sold to the distributor

on consignment, and approximately four of J. McIntyre's machines ended up in New Jersey. *Id*. J. McIntyre did not have offices, pay taxes, own property, advertise, or send employees to the state. The New Jersey Supreme Court held that jurisdiction over the manufacturer was proper because J. McIntyre "knew or reasonably should have known 'that its products are distributed through a nationwide distribution system that might lead to those products being sold in any of the fifty states'; and because [J. McIntyre] failed to 'take some reasonable step to prevent the distribution of its products in [New Jersey]". *Id*. (internal citations omitted).

The United States Supreme Court, in a plurality opinion, held that J. McIntyre did not purposefully avail itself of the New Jersey market, stating:

> Respondent has not established that J. McIntyre engaged in conduct purposefully directed at New Jersey. Recall that respondent's claim of jurisdiction centers on three facts: The distributor agreed to sell J. McIntyre's machines in the United States; J. McIntyre officials attended trade shows in several States but not in New Jersey; and up to four machines ended up in New Jersey. The British manufacturer had no office in New Jersey; it neither paid taxes nor owned property there; and it neither advertised in, nor sent any employees to, the State. Indeed, after discovery the trial court found that the "defendant does not have a single contact with New Jersey short of the machine in question ending up in this state." App. to Pet. for Cert. 130a. These facts may reveal an intent to serve the U.S. market, but they do not show that J. McIntyre purposefully availed itself of the New Jersey market.

*J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2790 (2011).

In light of *J. McIntyre*, Plaintiff Gerk must show that SARL's conduct indicates not just "an intent to serve the U.S. market," but rather that SARL purposely availed itself of the *Illinois* market. *Id*. at 2790. Plaintiff's Complaint, together with the Abrams Affidavit, state that: (1) "CL Medical"[1] was an exhibitor at the 2012 American Urogynecologic Society's Annual Scientific

---

[1] While the attached exhibit lists "CL Medical" without distinguishing between CL Medical Inc. and CL Medical SARL, the meetings were advertised on SARL's website, and the AUGS website listing "CL Medical" as an exhibitor links to SARL's website. See, e.g., E.C.F. Doc. 48, Ex. 13, at 2; Abrams Affidavit at ¶ 16.

7

Meeting in Chicago, Illinois; (2) "CL Medical"[2] advertised, sponsored, or promoted "Reference Centers" in Illinois and seven other states, including Plaintiff's implanting physician at Galesburg Cottage Hospital in Illinois (E.C.F. Doc. 47, at 9); (3) "CL Medical" performed product training courses for physicians in Illinois; and (4) one of CL Medical [Inc.'s] sales consultants conducted business out of Chicago, Illinois and sold multiple I-STOP devices to the Galesburg hospital (Pl. Am. Comp. at ¶¶ 31-33). In addition, Plaintiff asserts that Defendant SARL held itself out as a single entity—"CL Medical"—without distinguishing between the manufacturer and distributor. Finally, Plaintiff alleges that Vincent Goria traveled to Illinois on behalf of SARL to sell or promote the device.

Based on these facts, the Court finds that Plaintiff has alleged facts sufficient to establish that SARL "sought to serve" the Illinois market by targeting its actions toward Illinois. See *J. McIntyre*, 131 S.Ct. at 2788-89. First, Plaintiff's amended Complaint showing the number of I-STOP devices sent by SARL to the United States (900), and by CL Medical to Illinois ("multiple"), distinguish this case from the line of precedents holding that a single, isolated sale is not a sufficient basis for asserting jurisdiction. See *J. McIntyre*, 131 S.Ct. at 2791 (Breyer, J., concurring); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980); *Asahi Metal Industry Co. v. Superior Court of Cal., Solano Cty.*, 480 U.S. 102 (1987). Second, SARL exhibited its product at a scientific conference *in Illinois*. Cf. *J. McIntyre*, 131 S.Ct. at 2790 ("J. McIntyre officials attended trade shows in several States but not in New Jersey."). This allegation is supported by Plaintiff's exhibits showing that SARL advertised these conferences on its website. E.C.F. Doc. 48, Ex. 13, at 2.

Third, the amended Complaint alleges that SARL advertised Reference Centers and product training courses in Illinois, and Plaintiff's implanting physician in Galesburg, Illinois

---

[2] Again, "CL Medical" is ambiguous, but Plaintiff alleges this refers to SARL.

was listed as a reference. Together, these allegations distinguish SARL's actions from the facts of *J. McIntyre*, where there was no "'regular . . . flow' or 'regular course' of sales in New Jersey; and there is no 'something more,' such as special state-related design, advertising, advice, marketing, or anything else." *Id*. at 2792 (Breyer, J., concurring).

Fourth, the nature of SARL and CL Medical's business relationship is qualitatively different from the relationship between J. McIntyre and its "independent" U.S. distributor. *J. McIntyre*, 131. S.Ct. at 2796 (noting that, "[t]hough similarly named, the two companies were separate and independent entities with *'no commonality of ownership or management'*") (emphasis added). In addition to SARL and CL Medical's common ownership and management, vis-à-vis Vincent and Caroline Goria, Plaintiff's Complaint and the Abrams Affidavit allege that the two entities held themselves out under the ambiguous penumbra of "CL Medical," without distinguishing between the French manufacturer and the American distributor. For example, SARL's website contains statements such as: (a) "CL Medical Inc. is a US-based medical device company . . ." in the same paragraph as "CL Medical developed the I-STOP . . ." (E.C.F. Doc 48, Ex. 2 at 2); (b) "As a distributor and a manufacturer . . ." and "[a]t CL Medical, we are investing in our products and employees . . . . We hired two new sales reps this year." (E.C.F. Doc. 48, Ex. 7, at 5); and (c) SARL's website lists CL Medical, Inc. on the "contact" page, with a Massachusetts address and phone number. (E.C.F. Doc. 48, Ex. 11, at 2). In contrast, the agreement between SARL and Uroplasty, the former distributor, clearly indicates "CL Medical SARL" as the manufacturer. (E.C.F. Doc. 48, Ex. 14, at 8). At the very least, these examples show that the association between SARL and CL Medical was not as "separate and independent" as the relationship between the manufacturer-distributor in *J. McIntyre*. In addition, these

9

instances are relevant to issue of the capacity—whether Mr. Goria was acting on behalf of SARL or CL Medical when he promoted the I-STOP device.

Here, viewed in the light most favorable to Plaintiff, the Court finds that Plaintiff has made a prima facie showing that SARL purposefully availed itself of the privilege of conducting business in Illinois, therefore justifying specific jurisdiction. Plaintiff alleges that SARL exhibited its product at a conference in Illinois, established Reference Centers and hosted product training courses there, and sent its employees (Mr. Goria) to Illinois to market the device. These facts show that Defendant had sufficient minimum contacts with, and directed its business toward, the Illinois market.

Lastly, portions of the alter-ego, or veil piercing, theory of liability advanced by Plaintiff are indeed relevant to the specific jurisdiction analysis. SARL's representations worked to obscure the distinction between the two entities, and they shared common ownership and management. These facts distinguish the present case from *J. McIntyre*, where the manufacturer-distributor relationship was more attenuated. However, the Court declines address Plaintiff's veil piercing theory at this time. To do so at this stage of the litigation would be premature, as an essential element of veil piercing under Illinois law requires that "circumstances must be such that adherence to the fiction of separate corporate existence would sanction fraud or promote injustice." See *Hystro Prods., Inc. v. MNP Corp.*, 18 F.3d 1384, 1388-89 (7th Cir. 1994). Those circumstances cannot be gleaned from the record presently before the Court.

## CONCLUSION

For the reasons stated above, Defendant's Motion [43] to Dismiss is Denied. Defendant CL Medical SARL is directed to answer the amended Complaint within 21 days of this Order.

Signed on this 29th day of March, 2016.

s/ James E. Shadid<br>
James E. Shadid<br>
United States District Judge